## Hays's Estate.

*Wills—Power of appointment—Trusts and trustees—Spendthrift trust.*

1. Where testatrix gives a life estate to her husband, and directs that upon his death distribution shall be made "among such of my children as may then be living, and the issue of such of them as may then be dead, in such shares and upon such trusts as my said husband may by his last will and testament direct," and the husband by his will directs the income to be paid monthly for life to and among his children (who are the children of testatrix) and the survivor or survivors of them "free and discharged from all claims of creditors," with directions as to the disposition of the principal by will of a daughter, or of surviving children according to seniority, such creation of a spendthrift trust for the children is a valid exercise of the power in testatrix's will, and such trust will not be terminated at the request of all the children, although they are of full age and *sui juris.*

2. The exercise of a power of appointment may be good as to income, but bad as to principal.

HENDERSON, J., dissents.

Exceptions to adjudication of Van Dusen, J. O. C. Phila. Co., July T., 1925, No. 2249.

VAN DUSEN, J., Auditing Judge.—Emma Wood Hays died Sept. 29, 1916, leaving her last will and codicils thereto, duly probated, whereof she appointed her husband, I. Minis Hays, executor. I. Minis Hays survived his wife and filed the account now before us, but died July 5, 1925, before his account was audited. Subsequently, the Pennsylvania Company for Insurances on Lives and Granting Annuities was appointed administrator *d. b. n. c. t. a.,* and at the audit filed a supplemental account of transactions subsequent to the filing of the original account.

By her will, the testatrix devised and bequeathed the whole of her estate to her husband, I. Minis Hays, in trust to pay an annuity of $400 (increased by codicil to $600) to each of her daughters for life, and to pay the remainder of the income to himself for life, and upon the death of her husband directed that "my said estate & all the investments of the same shall be distributed among such of my children as may then be living & the issue of such of them as may then be dead, in such shares & upon such trusts as my said husband may by his last will & testament direct."

Dr. Hays is now dead; by his will he appointed the income from his wife's estate in the same way as the income from his own estate. All his own estate he left in a spendthrift trust [the apt words being "free and discharged from all claims of creditors, and without any right of assignment or anticipation whatever"]:

"To collect the income, interest and dividends therefrom arising and monthly to divide and pay over the amounts in hand in equal shares to such of my children as may then be living and the issue of such of them as may then be dead, such issue taking and dividing equally among themselves such share only as his, her or their parent or parents would have taken if living at the time of my death, for and during the full period of the respective lives of such children and their issue—the share of income of any child or grandchild dying childless to go to and be divided among the survivors of the class until the death of the last survivor. . . ."

There were four children of Dr. and Mrs. Hays living at the time of his death, and no issue of a deceased child. The persons to whom the income is actually appointed are within the class to which appointment may be made, although Dr. Hays refers to them as his children and not as his wife's children—who might have been different persons. The life estates to these

children, with cross-remainders of life estates among them, are, therefore, good *pro tanto*, so far as income is concerned.

The only disposition of the principal of his wife's estate by Dr. Hays is as follows:

"Upon the extinction of my inheritable blood through the childless death of my last child or grandchild, and the falling in of the last life estate in income, in execution of the power of appointment given by my wife's will, I give, devise and bequeath, limit and appoint all of the principal of the estate of my said wife, from whatever source arising, to such person, persons or other beneficiaries as my daughter, Sarah Minis Goodrich, shall by her last will and testament or paper in the nature thereof limit and appoint, and in default of such appointment, then according to the will of my oldest surviving child and so on in order of seniority."

The persons to whom this further appointment may be made are not confined to the children of Mrs. Hays and issue of deceased children, and the appointment is not within the power and is void. No appointment at all is made in the important event of the death of a child or grandchild leaving issue. There is, therefore, no valid exercise of the power as to principal, and the provisions of Mrs. Hays's will for such a contingency take effect. These are:

"But if my said husband die without having made such testamentary disposition, then I direct that my said residuary estate shall be distributed in equal shares among such of my children as may then be living, & the issue of such of them as may then be dead; such issue nevertheless taking and dividing equally among themselves such share only as his, her or their parent or parents would have taken if living at the time of the death of my said husband."

It was argued that the life estates in income created by Dr. Hays fall with the estate in remainder. Horwitz v. Norris, 49 Pa. 213, seems to me to give the answer. That case concerned a power of appointment which was exercised by attempting to give life estates to persons within the class (daughters) and remainders to persons outside of the class (grandchildren). In default of a good appointment, the fee went to the daughters under the original will. Strong, J., said: "Nothing done under the power of appointment, then, is effective, except the limitation of life estates to the daughters. *It may be admitted that is distinguishable from that part of the attempted execution which is bad, and, if so, that it may be supported.* It is then the case of a partial execution, and that portion of the fee of one-sixth of Fair Hill not appointed remains as devised by Joseph P. Norris, Sr., in default of appointment. That is, each of the daughters has an estate for life by virtue of the partial execution of the power, with an immediate vested remainder in fee, by virtue of the will by which the power was created. Thus, of course, each has a complete fee simple."

In Johnson's Estate, 276 Pa. 291, the same conclusion is approved in the course of the court's discussion; but as the case arose only after the death of the life-tenant, who had suffered the estate to remain in trust during his life, the decision is not authoritative on the point now under consideration.

Many cases have dealt with this question where the invalidity of the estates in remainder resulted from an application of the rule against perpetuities; and I think the considerations are the same in both cases. The result is that declared in Whitman's Estate, 248 Pa. 285: ". . . the Pennsylvania rule is as stated by the court below, *i. e.*, that a valid limitation which is associated with, but practically possible of separation from, one that transgresses the rule against perpetuities will not be struck down, unless the will as a whole

not only shows the void limitations, but that the general scheme and dominant purpose of the whole disposition in question were to tie up the testator's estate beyond the time allowed by law; when such is the case, however, the provision falls in its entirety. While the last part of this rule is freely criticised by some text-writers, yet the cases cited in the opinions of the Orphans' Court show it to be implanted in our law."

In that case there were life estates to persons who were within the rule against perpetuities with remainders to vest at a time beyond that prescribed by the rule, and the court sustained the life estates. The same result was arrived at in the recent case of Jones's Trust Estate, 284 Pa. 90, and in other cases therein referred to.

An illustration of the class of cases where the whole of the testator's provisions will fall is found in McCafferty's Estate, 2 D. & C. 29. In that case estates were struck down as too remote which were to vest only at the end of a thirty-year period, and the estates limited during that period fell with them. But this was because "the only possible purpose that can be imputed to the testator is his desire to hold his estate together beyond the limit allowed by law;" and Thompson, J., for this court said: "Where equitable estates for life are given, there are sound and cogent reasons for holding such estates valid, even though the testator may inadvertently or designedly have transgressed the rule as to ultimate remainders, just as the preventing of intestacy or disinheriting of heirs is often the controlling consideration in sustaining remainders." See, also, Ledwith v. Hurst, 284 Pa. 94.

It may be that the ground of the criticisms referred to in Whitman's Estate is the indefinite character of the test, which, indeed, would permit an argument to be made and a conclusion reached on either side of the question in many cases. The tendency, however, is to support the good part, as in Whitman's Estate, 248 Pa. 285, and Lawrence's Estate, 136 Pa. 354. In the latter case, it is true, the court further concluded that the estates in remainder were good; but the decision was also expressly based on the point in question with such deliberation that the court takes pains to say that Smith's Appeal, 88 Pa. 492, which holds to the contrary, was wrong. In the latter case there is no discussion and no recognition of any disputable question, and the result is assumed rather than decided.

Certain other cases should be noticed. Wickersham v. Savage, 58 Pa. 365, was a case of a gift to a class with a power to a parent to direct shares and proportions. There was only one person in the class, and it was held that he necessarily took a fee and the power could not affect him. The same situation occurred in Johnson's Estate, 276 Pa. 291, and this reason is given as one of the grounds of decision. Smith's Estate, 4 W. N. C. 265, held that a power "to make any division or distribution of my whole estate, real and personal, among my children" did not authorize an appointment in trust for the children for life, with remainder as they should appoint. It was said that as the testator had given to his children, the power of appointment was only to create unequal shares and not "to limit to them a less estate and so fetter them that it could not be fully used by each." This conclusion is noticed in Rafferty's Estate, 281 Pa. 325, but it is also there added: "However, unless from the language used it appears that some condition limiting the manner of the disposition has been fixed, the donee may establish a less estate than a fee."

The present case may be distinguished from Smith's Appeal by the permission given to Dr. Hays to direct "in such shares and upon such trusts. . . ."

If, then, we adapt to this case the test formulated in Whitman's Estate (and I think the test is the same, whether we are concerned with the excessive

Hays's Estate.

exercise of a power or the rule against perpetuities), we find that Dr. Hays was very far from having a "general scheme and dominant purpose" to go outside the class to which he could appoint. In fact, he had a very incomplete plan. He did not provide at all for the disposition of principal in what was really the most likely event, viz., the death of one or more of his four children, leaving issue. What little he attempted to do with principal is separated by a wide space of time and probability from his disposition of income. I think the "shares and trusts" which he created for income should be preserved.

Before coming to a final conclusion, I should notice the provisions of item IV of Dr. Hays's will. In the exercise of the power of appointment given by the will of his wife (as he expressly states) he directs that his trustees "shall permit and allow any unmarried (or widowed) daughters, if they so elect, or any one of them, to use and occupy the house Number 266 South 21st Street, in which I now live, for and during the term of her or their natural lives," and he directs his trustees "to pay all taxes, water rents, insurance premiums and other charges, excepting replacements and repairs." He further directs that, if the daughters prefer, the trustees may sell the house and buy another for the same purpose, or, under certain conditions, may invest the proceeds. This trust is also good *pro tanto;* and if it is preserved, a separate fund should be set aside in the hands of the trustees, out of the income of which these items may be paid. The fact that a portion of the principal, on the death of a child who leaves issue, may go out of the trust to such issue makes that particularly desirable. The charges for upkeep of No. 266 South 21st Street have priority over distribution of the "clear net income" (see item V of the will).

I assume that Annie Bradford Hays, one of the daughters, is unmarried and entitled to the benefit of this provision. I need not decide whether the trust must be kept open for any daughters who may hereafter become widows.

From the information contained in the letter of Joseph Carson, Esq., dated Nov. 25, 1925, which is attached hereto, I find that $25,000 is a proper sum for this purpose.

There remain the cross-remainders of income among the children which are thus created: "The share of income of any child or grandchild dying childless to go to and be divided among the survivors of the class until the death of the last survivor."

As above stated, the fact is that at the death of Dr. Hays the only persons who were actually in being or who could ever come into being and who could be entitled to shares of income, either originally or by accrual, were children of Mrs. Hays, the original testatrix. They were necessarily in being at her death, and whatever remainders in income may hereafter vest in them must vest within the time stipulated by the rule against perpetuities. If there had been any children of deceased children who were living at the death of Dr. Hays and were not living at the death of Mrs. Hays, then there might be cross-remainders of income which would vest more than twenty-one years after the death of Dr. Hays and of Mrs. Hays's children; and the fact that all the remainders might actually fall in during the lifetime of Mrs. Hays's children would not sustain them. The validity of the estates is not to be determined by the probability of what might occur after the date of their creation, nor by what actually does occur; but if at the instant the estates are created the facts are such that there can be no possibility of violation of the rule (which is the case here), the estates are good.

It is argued that, as the life estates and the remainders in fee are in the same persons, they will coalesce, the trust will become useless and the equit-

able owner of the whole will be entitled to possession. This occurred in Horwitz v. Norris, 49 Pa. 213, and Johnson's Estate, 276 Pa. 291, and also in Davenport v. Harris, 3 Grant, 164. But the trust for No. 266 South 21st Street must be preserved. As to the balance, the life estates and the remainders are not in the same persons in the same proportions, for there are cross-remainders of income which upset the equality. The trust fund must be kept intact to preserve these cross-remainders of income and to preserve the spendthrift trust feature of the trust (see item I *(C)*, bottom of page 2, which applies by reference to the trusts of the appointed estates): Moore's Estate, 198 Pa. 611; Gourley's Estate, 238 Pa. 62; Cook's Estate, 6 D. & C. 260; Schwehm's Estate, 264 Pa. 355; 28 Dist. R. 261.

An argument was made to show the invalidity of the restrictions upon his daughters' enjoyment of the income of both estates and of the prohibition of the removal of personal property of both estates more than fifty miles from Philadelphia; but these are matters not now before the court. If they are invalid restraints on enjoyment, they fall; but the estates do not fall with them. The direction in the codicil charging to the income of his son George certain indebtedness to himself is not valid as against the income from this estate, as that would be an appropriation by Dr. Hays to himself, and no account need be taken of it now.

.    .    .    .    .    .    .    .    .    .    .    .    .

The balance was awarded to Sarah Minis Goodrich and the Pennsylvania Company for Insurances on Lives and Granting Annuities, "in trust to pay the income to Elizabeth Elliot Hays (now Sinclair), Sarah Minis Goodrich, Annie Bradford Hays and George Wood Hays in equal shares, with cross-remainders, etc., as provided in the will of I. Minis Hays, exercising the power of appointment given him by the testatrix."

*Joseph Carson,* for exceptions.

THOMPSON, J., April 30, 1926.—The testatrix by her will gave her estate to her husband as trustee to dispose of the income by way of annuities, etc., during life; and directed that upon his death her estate "shall be distributed among such of my children as may then be living and the issue of such of them as may then be dead, in such shares and upon such trusts as my said husband may by his last will and testament direct. But if my said husband die without having made such testamentary disposition, then I direct that my said residuary estate shall be distributed in equal shares among such of my children as may then be living and the issue of such of them as may then be dead," etc.

Testatrix left surviving her husband and four children, and the latter are still living, so that no question of issue of deceased children at present arises. The husband is deceased; and by his will appointed the income from his wife's estate "in precise conformity to the plan of distribution of income" from his own estate, which latter he gave in equal shares, under spendthrift provisions, to the children living at his death, issue of deceased children taking the parent's share, during the respective lives of such children and their issue, the share of income of any child or grandchild dying childless to go to and be divided among the survivors of the class until the death of the last survivor; made certain provisions with respect to the occupancy of the joint residence of himself and his wife, which, however, was the wife's property; and appointed the principal, upon the extinction of his inheritable blood, to such person, persons or other beneficiaries as his daughter Sarah Minis Goodrich should by will appoint, and in default of appointment then according to the will of his oldest surviving child, and so on in order of seniority.

Hays's Estate.

At the audit the four children asked that the trust estates be terminated and the fund be awarded absolutely to them. This was on the ground that, so far as the remainders were appointed at all, the appointment was in excess of the power and was void, and the remainders were vested in them in default of appointment. It was argued that the whole plan of the testator was destroyed with the failure of the appointment in remainder, that the life estates fell as an incident to the plan and that the children, therefore, took a fee in the whole as in default of appointment.

The Auditing Judge held that the remainders were vested in fee in the children, but that the good part of the appointment, if any, could be separated from the bad; and that the trusts of income were good and must be preserved to protect the spenthrift features. If the trusts of income are good, we think that the rest of the conclusion follows for the reasons given by the Auditing Judge: Lawrence's Estate, 136 Pa. 354; Whitman's Estate, 248 Pa. 285; Johnson's Estate, 276 Pa. 291; Ledwith v. Hurst, 284 Pa. 94, and Jones's Trust, 284 Pa. 90.

The question whether the trusts of income are within the power requires further consideration.

It was argued that by her will the testatrix parted with her right of dominion over her estate in favor of her children; but, is this broad statement an accurate interpretation of the will? True, death ends the dominion of a decedent over his estate; in intestacy, to those appointed by the intestate laws, and in cases of testacy, to those upon whom the testator confers that dominion.

The testatrix does not in terms give her estate ultimately to any one; the gift is implied merely from the direction—not to the donee of the power, but—to the trustee to distribute. Until the time of distribution arrives the testatrix reserved her dominion, except to the extent that that dominion is to be exercised by the donee of the power in directing shares and trusts among children then living and issue of deceased children. The very fact that not all of testatrix's children, or all of their issue, living at her death are, at all events, to take at the time of distribution, viz., the death of the husband, but only those then living, shows that, even under the gift over, the remainders are contingent during the lifetime of the donee of the power (Groninger's Estate, 268 Pa. 184); and the fee is in the trustee. It shows further that the dominion of testatrix over her estate is meanwhile delegated to the donee of the power. And what is there in the language of the will, that confers the power to create trusts, to indicate that that dominion is not intended to be co-extensive with the dominion of the donor? True, as said in Horwitz v. Norris, 49 Pa. 213, 217, the donee "could not appoint estates or uses which the donor of the power could not have created by his will;" but, what is there in our law that prevents a testator from declaring spendthrift trusts?

Sugden on Powers (3rd American Ed.), LL. 252, states: "He (the donee) cannot annex any condition for his own benefit; nor can the property appointed be exempted by the donee of the power from the debts of the appointee." But neither, under English law, can the donor. In Norris v. Johnston, 5 Pa. 287, it is said that "in England the power of alienation is considered an inseparable incident to the right of property in anything. . . . An individual disposed to provide for an improvident son or relation limits the interest intended to be granted him for his sole use during his life, and provides that his interest shall be forfeited if he transfers or assigns, or if it should be taken for his debts; in either event, it is limited over, or reverts. By this means

the creditor, the alienee, and the object of the bounty, lose the benefit of the devise or gift. Here, however, the donation is preserved to the recipient, upon the conditions and limitations on which it is given."

And in Moore's Estate, 198 Pa. 611, 612, it is said by Judge Penrose, upon whose opinion the decision of this court in sustaining a spendthrift trust was affirmed: "The right of alienation, whether by voluntary act or by adverse proceeding, is an inseparable incident of ownership in fee, and, in consequence, where the beneficiary is entitled to the absolute interest, such a trust cannot be created (Keyser's Appeal, 57 Pa. 236); but it is not an inseparable incident of a life estate (4 Kent, 131); and, hence, the manifest distinction."

And in line with this principle is Morgan's Estate (No. 1), 223 Pa. 228, where it was not the exercise of the power by the donee, but the attempted creation of a spendthrift trust for the donee by the testatrix herself that was stricken down, on the ground that "the right of alienation in the present case was given the donee in unmistakable and unrestricted terms; and this of itself defeats the attempted trust." Having granted her husband, who was the donee of the power, an absolute estate, the will of the testatrix was executed, and the donee could not revive it so as to save his estate from the grasp of creditors.

In Wickersham v. Savage, 58 Pa. 365, the testator gave a legal life estate to his son, and at his death to and among the son's children and issue "in such shares and proportions and for such estates as he by will or other appointment in writing should direct." The donee had but one child, a son, and appointed the estate to that son for life, and after his death for such uses and purposes as he by will might appoint. This was held not to be a good execution of the power. The Supreme Court said: "Beyond the children and issue of John, no estate vested or was to be appointed. That it vested in them on the death of the testator will not admit of a doubt. It could not be in abeyance, and it was not given to John the second *in trust*." In Smith's Estate, 4 W. N. C. 265, Appeal of Fidelity Trust Company, there was again a legal life estate with power to the life-tenant to make any division or distribution; and it was held that this did not confer power to create trusts.

In Boyles's Estate, 5 W. N. C. 363, Penrose J., for this court, said: "The cases of Horwitz v. Norris, 49 Pa. 213; Wickersham v. Savage, 58 Pa. 365; and Smith's Estate, 4 W. N. C. 265, will be found upon examination to differ from the present one in some very essential points.

"In Smith's Estate there was no power to create or limit estates, but simply to divide and distribute; while in the other cases the attempt of the donee of the power was to appoint to persons not of the class in favor of whom it was conferred. The decisions were on these grounds.

"Here the power is very ample: 'To such of my children, or their issue, in *such way or manner*, and in such proportions and for such *estate and estates* as she, my said wife, by her last will and testament . . . shall order, direct, limit and appoint.' . . . Of course, where the trust is to accomplish that which is not within the terms of the power, as in Horwitz v. Norris and Wickersham v. Savage, it is on that ground invalid; not simply *because* it is a trust. There is nothing in these cases which asserts a contrary doctrine. Horwitz v. Norris impliedly, if not expressly, admits it.

"In Alexander v. Alexander, 2 Vesey, Sr., 642, it was said by Sir Thomas Clark that an appointment under a power to the separate use of a daughter, so far from being an objection, was more strictly carrying into execution the will of the donor."

Hays's Estate.

And the separate-use trust created by the will of the wife was sustained.

It is thought, however, that Pepper's Estate, 120 Pa. 235, holds that where the power, although to appoint estates, is confined to a class, and there is but one member of that class, a spendthrift trust cannot be created by the donee of the power. It is true that what the donee did in that case was attempted to be sustained as a spendthrift trust; but Mr. Justice Paxson pointed out that the will of the donee contained no trust of any kind; that, at most, it attempted to give "a conditional fee subject to forfeiture for breach of the condition against alienation." That was something which the testator himself could not do, and the power was stricken down. In the course of the opinion it is stated that the donee could not, and the court could not, write a spendthrift trust into the will of the donor. But the real ground of the decision was that the extent or scope of the power of appointment depended upon the will of the testator.

"The donee of a power is simply a trustee for the donor to carry into effect the authority conferred by the power. In exercising the power, he must observe strictly its provisions and limitations. The estate appointed is that of the donor and not of the donee, and, in making the appointment, *the intention of the donor* and not that of the donee must prevail. In case of a restricted power, the donee's discretion in exercising the power is defined by the will, and the limit there placed upon it must be observed." Rogers's Estate, 218 Pa. 431, 433.

And the subsequent cases show that the donee of a power of appointment, exercised by the instrument and in the manner designated by the testator, has within the limits of the power the same dominion over the appointive estate that the donor had. Under a general power, the donee becomes practically the owner of the fee, and this is so even if the power is to be exercised by will only. And, under a limited power, whether as to quantity merely or as to quality of the gift, and within the objects of testator's bounty, the donee's authority is co-extensive with that of the testator, and as absolute.

In Ewalt v. Davenhill, 257 Pa. 385, the validity of a spendthrift trust created by the third successive donee of the power conferred by the original testator was upheld. William Swain, the testator, created trusts, and gave his son James power to revoke those trusts and create new ones; and thus, says Mr. Justice Walling, "so far as making a testamentary disposition of the property, James Swain was practically owner in fee." But it was not the spendthrift trust created by James that was sustained. James by his will gave his son William, Jr., an equitable life estate, free from the control of his creditors, and provided that after the latter's death the property should be held "in trust for the children of the said William Swain and the issue of such as may be deceased, in such parts, shares and proportions and for such estates as they would be entitled to if the said William Swain had died intestate;" and afterwards gave power to William, Jr., by will to appoint the shares of his children or their issue to trustees, "in trust for the sole and separate use of said child or issue of said deceased child, under such limitations and restrictions as in his discretion he may deem best, so as to secure the same to the said child or issue of deceased child, for his, her, or their sole and separate use, maintenance and enjoyment." William, Jr., by his will directed that the share of each of his children or their issue be held in trust for them during minority, and after that time to pay a child's part of rents and income to the child directly, whether covert or sole, during life, for her separate use and benefit, free from control of husband, and from liabilities from any debts or engagements, the receipts of the children, whether

covert or sole, to be sufficient acquittance. The words of James's will are not the words usually employed to create spendthrift trusts, but Mr. Justice Walling said that "no set form of words is necessary to the creation of a spendthrift trust;" and the spendthrift trust created by William, Jr., under his power given only by "practically the owner in fee" was sustained. In the present case the power to create trusts is given by the original and actual owner of the fee, without the slightest hint by her of qualification or restriction as to the kind or character of the trusts to be created.

In Lewis's Estate, 269 Pa. 379, 381, Mr. Justice Kephart says: "In determining whether a power of appointment is validly exercised, consideration must first be directed to the intention of the donor, as found in the instrument creating the power. The applicability of the rules of law, relating to the exercise of the power of appointment, is not to be measured solely by the particular class in which the power may be conveniently placed or wherein it may operate, but from a consideration of the intent and purpose for which the power was created, and whether its exercise expressly or impliedly violates the conditions laid down by the donor. It must be remembered that a certain confidence, trust and discretion has been lodged in him who enjoys the power, and, as Judge Penrose observes, 'the principles relating to the execution of powers are simple and logical, and only such as are suggested by reason and the plainest dictates of common sense.' . . . It (the power in that case) was restricted to a class only; but, operating within the class, it was not only general but absolute. Therefore, a use and trust, so imposed, being within the limits of the authority and in the exercise of an absolute right within the class, was not in violation of the original founder's intention." See, also, McClellan's Estate, 221 Pa. 261.

And in Rafferty's Estate, 281 Pa. 325, 330, Mr. Justice Sadler says: "The scope of the power conferred is to be determined from the words used, and the intention of the testator as evidenced by his whole will: Bailey's Estate, 276 Pa. 147. If an examination leads to the conclusion that the disposition made by the donee does not violate in any way conditions imposed by the donor, the directions given by the donee will be upheld."

In the case in hand the testatrix directs the distribution of her estate upon the death of her husband "among such of my children as may then be living and the issue of such of them as may then be dead, in such shares and upon such trusts as my said husband may by his last will and testament direct;" and the husband by his will directed the income to be paid monthly for life to and among his children and the survivor and survivors of them, "free and discharged from all claims of creditors, and without any right of assignment or anticipation whatever."

In Spring's Estate, 216 Pa. 529, where, after an absolute estate to the children of a deceased daughter, the testator directed that the share be held in trust for them, and the trust was sustained, Mr. Justice Elkin said: "It is not for him who receives the gift to fix the *quantum* of the estate devised, the time when it is to vest absolutely, the method by which it is to be controlled or managed, or the conditions to which it is subjected." True, that immunity from debts of the beneficiary is not even considered in upholding spendthrift trusts, and that such trusts are upheld only because they are for the benefit of the donor, who in this way is assured that his bounty will, beyond all hazards, reach those whom he intends to benefit. But does the testator waive such benefit when he gives power as broad as is his own to create trusts, and does he prohibit his donee from imposing such restrictions as will assure the enjoyment of his estate beyond peradventure by those to whom through the

donee he gives it? And is it the law that when a testator confers power in express terms to create trusts, he means or can mean only trusts whose benefit may be destroyed at any time by creditors of the *cestui que trust*, or separate-use trusts that can endure only during coverture, but cannot and never does mean any trust that he himself might have created? *Cujus est dare, ejus est disponere;* and it seems to us that when a testator uses language like that in this will he himself disposes of his estate upon such trusts as in the judgment of the donee best effectuate his intention. At any rate, until there is a positive ruling by the appellate courts against the validity of a spendthrift trust declared by the donee of a power to create trusts so general as in the present, we cannot consent to the termination of this trust: Minnich's Estate, 206 Pa. 405; Fox's Estate, 264 Pa. 478.

The exceptions are dismissed, and the adjudication confirmed absolutely.

LAMORELLE, P. J., did not sit.

HENDERSON, J., dissenting.—By her will, Emma Wood Hays gave a life estate to her husband, Dr. I. Minis Hays, and provided:

"And upon the death of my said husband I direct that my said estate & all the investments of the same, shall be distributed among such of my children as may then be living & the issue of such of them as may then be dead, in such shares & upon such trusts as my said husband may by his last will & testament direct.

"But if my said husband die without having made such testamentary disposition then I direct that my said residuary estate shall be distributed in equal shares among such of my children as may then be living & the issue of such of them as may then be dead; such issue nevertheless taking & dividing equally among themselves such share only as his, her or their parent or parents would have taken if living, at the time of death of my said husband."

The testatrix was survived by three daughters and a son, the only children she ever had, and they were all living at the date of the death of the husband, and all of them want the trusts set up by the donee of the power terminated.

Dr. Hays exercised the power by directing that his unmarried or widowed daughters should have for life the free use and occupation of premises, No. 266 South 21st Street, belonging to the donor of the trust, with authority to sell and purchase elsewhere, or to invest the proceeds and use the income to rent another house or apartment; and to use and enjoy for life such furniture, pictures, plate and household goods as belonged to his wife; with provision for an equitable division, in case they do not desire them, to and among all the children for their lives and the lives of the survivors and survivor. The Auditing Judge awarded $25,000 in trust to apply the income to defray the charges of the 21st Street house.

The donee then provided that any income from this trust fund payable to any unmarried or widowed daughter should only "be paid to her so long as she continued to reside in the United States or shall be temporarily traveling abroad with one of her sisters or brother; provided, however, that if she should be abroad unaccompanied by one of her sisters or brother, but return within seven months, the said income accruing to her during her absence shall be paid her upon her return, upon her binding herself satisfactorily to my Trustees to remain in this country for the seventeen months immediately following her return. I make this provision because of my very strong wish that my children should not expatriate themselves for long periods of time, thereby loosening those family and home ties and associations

I desire they should be most solicitious to strengthen. I direct my Trustees in the event of any one of my said unmarried (or widowed) daughters remaining abroad unaccompanied by one of her sisters or brother for a period longer than seven months in any two consecutive years, unless detained by serious illness, to withhold the income otherwise payable during that period to such daughter and to distribute the same in equal shares to the other recipients of income from my own and my wife's residuary estate. On my absent daughter's return, she is again to enjoy her share of income as it accrues."

He further directed his trustees, subject to the foregoing provisions, to pay over the clear net income from his wife's estate, "in precise conformity to the plan of distribution as to income from my own estate as hereinbefore stated."

In item I (C) of his will he directed the income to be paid monthly for life, to and among his children (the issue of such as were deceased may be disregarded, as there were none such) and the survivors and survivor of them, "free & discharged from all claims of creditors, and without any right of assignment or anticipation whatever."

Upon the death of the survivor of the children he disposed of the *corpus* in the following terms:

"Upon the extinction of my inheritable blood through the childless death of my last child or grandchild and the falling in of the last life estate in income, in execution of the power of appointment given by my wife's will, I give, devise and bequeath, limit and appoint all of the principal of the estate of my said wife, from whatever source arising, to such person, persons or other beneficiaries as my daughter, Sarah Minis Goodrich, shall by her last Will and Testament or paper in the nature thereof limit and appoint, and in default of such appointment, then according to the Will of my oldest surviving child and so on in order of seniority.

"While I disclaim the intention of controlling the manner of exercise of the foregoing power of appointment, I strongly recommend that if there be no descendant of mine capable of inheriting in the next or succeeding generation, the provisions for benefiting mankind by promoting the pursuit of knowledge which I have made in the ultimate disposition of my own estate should be followed."

The will of the donor vested the title in her estate in fee in her four children, subject only to the power she gave to her husband to "distribute" the same among her children, "in such shares and upon such trusts" as he might by will appoint.

We must now decide is his exercise of the power valid and may the trust be terminated. While the power has been excessively exercised, the question presents itself, stripped of the excess, is any part of the appointment good?

He has appointed an interest for life in the unmarried and widowed daughters in the South 21st Street house, and directed that a fund be set aside to defray the charges thereon; and he has created cross-remainders in the income of the trust in favor of the four children and the survivors and survivor of them with clauses against their debts and against anticipation; he has forbidden the daughters to live abroad or to travel abroad except in pairs, with forfeiture provisions in case these conditions are broken, and a provision that if a daughter should be abroad alone and return within seven months she may receive her income for this period, "upon her binding herself satisfactorily to my Trustees to remain in this country for the seventeen months immediately following her return."

He then further provides that upon the death of his surviving child and the extinction of his inheritable blood, his daughter, Mrs. Goodrich, may

appoint the remainder, and in default of her so doing "then according to the will of my (his) oldest surviving child & so on in order of seniority."

This is truly a remarkable exercise of a very limited power. It is undoubtedly an excessive exercise of the power. The remainder is badly given because he was limited in appointing it to her children, and the Auditing Judge has so declared. The remainder is, therefore, vested, under the donor's will, in fee in the four children.

The provisions whereunder the daughters must live in this country or be limited in traveling abroad, under pain of forfeitures, is without warrant in the donor's will, and, hence, excessive and void.

This leaves the trust of the 21st Street house and the fund to defray the expenses thereof and the cross-remainders in the income in favor of the children, with provisions against debts and anticipation. Omitting for further discussion the latter provisions, I have no hesitation in declaring these trusts within the power conferred. But these contingent interests may be refused or released, as all the parties are *sui juris* and are praying for the termination of the trust. Similar contingent interests were involved in the termination of the trust in Horwitz v. Norris, 49 Pa. 213, and Mr. Justice Strong said (page 221): "Such interests could not be set up in opposition to the decree for which they pray." See, also, Scull's Estate, 249 Pa. 52.

Recalling that the appointee merely had the power to "distribute" the estate among the children in such shares and upon such trusts as he thought proper, I must conclude he merely could divide the estate, unequally if he chose, among the class, and if he saw fit, in trust.

He could have appointed separate-use trusts for the married daughters: Boyles's Estate, 5 W. N. C. 363. He could have erected trusts for the benefit of the children, but he could not exercise the power for the benefit of himself or the donor. She had parted with her right of dominion in favor of her children, and his power of appointment was limited.

Could he insert in the trust provisions against debts and anticipation of income? Yes, if such are for the benefit of the children, otherwise no. Such trusts are but the expression of the dominion of the owner of property, and, in law, are in nowise concerned about the protection of the beneficiary. In Morgan's Estate, 223 Pa. 228, 230, Mr. Justice Stewart said: "The law rests its protection of what is known as a spendthrift trust fundamentally on the principle of *cujus est dare, ejus est disponere.* It allowed the donor to condition his bounty as suits himself, so long as he violates no law in so doing. When a trust of this kind has been created, the law holds that the donor has an individual right of property in the execution of the trust; and to deprive him of it would be a fraud on his generosity. For the law to appropriate a gift to a person not intended would be an invasion of the donor's private dominion: Holdship v. Patterson, 7 Watts, 547. It is always to be remembered that consideration for the beneficiary does not, even in the remotest way, enter into the policy of the law; it has regard solely to the rights of the donor. Spendthrift trusts can have no other justification than is to be found in considerations affecting the donor alone. They allow the donor to so control his bounty, through the creation of the trust, that it may be exempt from liability for the donee's debts, not because the law is concerned to keep the donee from wasting it, but because it is concerned to protect the donor's right of property."

I have reached the conclusion that under this limited power the donee thereof was not authorized by the donor to insert in the trust provisions against debts or anticipation of income. They are, therefore, in excess of the

power conferred upon him, and, hence, are void and should be stricken down, and the authorities uphold this conclusion.

In Horwitz v. Norris, 49 Pa. 213, the donor of the trust gave it to his son for life and then to his children in such shares and proportions and for such estate and estates, use and uses, as he might appoint. It should be noted that he could only define the shares and proportions and direct the estates and uses. The appointment of the remainder was bad, and, hence, it was declared invalid. The trusts for the daughters in whom the remainder in fee under the will of the donor was vested were not for their sole or separate use, and, hence, Mr. Justice Strong held they were executed under the statute of uses. And he further pointed out that if they were not so executed, all of them having contingent interests, the class being closed, could join in asking for a termination of the trust, and said, as was quoted above, "Such interests could not be set up in opposition to the decree for which they pray."

In Wickersham v. Savage, 58 Pa. 365, the donor gave his estate to his son for life, and after his decease to and among the children and issue of said son in such shares and proportions and for such estates as he by his last will or other appointment in writing shall direct; and in default thereof, then to and among said children and issue and their heirs equally. The donee of the power had but one child, and on his death, after charging the estate with the payment of $3000 annually to the widow, he appointed the residue to be held by his executors in trust to receive and pay over to his son John $1500 annually until he arrived at the age of twenty-five years, and thereafter the whole of the income for life, with provisions against liability for debts and anticipation of income. Chief Justice Thompson, speaking for the Supreme Court, said that the right to exercise the power of appointment did not arise, because there was only one in the class. We must, nevertheless, ascertain what was really involved by the decision. Undoubtedly, a valid separate-use trust could have been created for any married daughter, had there been such, under Boyles's Estate, 5 W. N. C. 363; a good life estate could have been created for the only son, but as the remainder in fee was vested in him, that life estate was properly terminated unless the provisions of the trust against debts and anticipation of income were good. It could be said that the appointee took a good life estate under the will of the donor, which could not be terminated because of its spendthrift character. But in terminating this trust, the Supreme Court has implicitly ruled that under such a limited power a spendthrift trust could not be set up.

In Pepper's Appeal, 120 Pa. 235, this question seems to have been clearly ruled. Therein the donor gave a life estate to his son Charles, with power to appoint "to the use of such of his children and issue and for such estates and in such shares as he shall by his last will appoint, and in default of appointment, then to the use of his children who may be living at his death and the issue of any deceased child, his heirs, executors, administrators and assigns, as tenants in common, the issue of any deceased child to stand in the place of the decedent and to take only the shares their parents would have taken if living."

The son referred to had an only child. Under the will of the donor he acquired a vested estate in fee, or the entire interest, subject to being divested, so far as the power should be validly exercised by his father. The question, therefore, in issue was, has there been a valid exercise of the power?

The material part of the execution of the power by Charles Pepper is as follows: "Until the expiration of twenty-one years after the death of the

Hays's Estate.

survivor of my brothers, George S., Lawrence S., and Frederick Pepper, of my sister, Mrs. Catharine Cardette, and of myself, all of whom were living at the death of my said father, I devise, bequeath and appoint my said share in my father's estate to my said son Charles Rockland Pepper, upon the express condition, *that he shall not in any manner convey, assign or transfer* the same or the rents, issues and profits thereof to any person whomsoever, or do or suffer any act, matter or thing whereby *the same shall be attached, seized or taken in execution* or be made subject to or be affected by the insolvent or bankrupt laws of the United States, or of any other state thereof, or of any foreign country, and in case any of these events shall happen contrary to the true intent and meaning of the foregoing condition within the said term of twenty-one years after the death of the survivor of my said brothers, sister and myself, and also in case my said son shall die before the expiration of the said term of twenty-one years leaving issue, then, and in any such case, I devise, bequeath and appoint my said share in my father's estate to such issue, their heirs, executors and administrators, and if more than one, in such shares and proportions as if my said son had died seized and possessed thereof intestate."

This brings me to the crucial question as to whether the donee of the power could validly erect a trust or estate spendthrift in character, and as to this Mr. Justice Paxson said (page 254) : "It was urged, however, that it created a spendthrift trust, and as such may be sustained under the authorities in this state. But the appointment contains no trust of any kind, and to sustain this assumption we would have to write a spendthrift trust into the will of George Pepper. This cannot be done, either by the donee of the power or by this court. We look in vain through the will of George Pepper for one word which authorizes the donee of the power to appoint a forfeitable estate to Charles Rockland Pepper, or create a spendthrift trust. It is true it authorizes the donee to appoint the share referred to 'in such shares and for such estates' as he shall deem proper. But the testator, when he used this language, was contemplating the distribution of the share among a class consisting of several persons, certainly of more than one. And had there been several of the class, the donee of the power could have appointed an estate for years to one, an estate for life to another, with remainders to the third in fee, or he could have made any other division which would have given the whole share to some one or more of the class. This is what the testator evidently meant when he used the words 'for such estates.' They have no meaning as applied to Charles Rockland Pepper as the only member of his class, unless we hold that they were intended to authorize the donee of the power to cut down the estate which he took under his grandfather's will, from an estate in fee to an estate upon condition and forfeitable for alienation. This we are not prepared to do."

Under the will of the donor, the donee of the power, had he a married daughter, could undoubtedly have set up a valid separate-use trust. He could have appointed a valid life estate in his son, but as the remainder was vested in him, the use would be executed.

If the spendthrift provision could have been validly attached to the estate for years, then undoubtedly we should have had a good trust which could have been supported; but as the will of the donor did not confer the power to create a spendthrift trust, its inclusion in the exercise of the power was excessive, and, hence, stricken down.

But it is said the will in this case did not establish any trust at all, let alone a spendthrift trust, and that that was the real ground of the decision.

This, however, overlooks the reasoning of Penrose, J., in the court below, wherein he pointed out (120 Pa. 242) that the estate for years was good, and the legal title could have remained in the trustees under the will of the donor, and he then vigorously argued (page 246) that the spendthrift feature should be sustained as being for the benefit of the *cestui que trust.*

This court, sitting *in banc,* refused to adopt these views, and therein was sustained by the Supreme Court.

It may be urged that the real ground of decision in Pepper's Appeal, 120 Pa. 235, was that the court will not be astute to indulge in inferences to clog titles and set up restraints on alienation.

The exercise of the power by the will of Dr. Hays is bad, for the further reason that he has not created a trust. He has failed to name trustees and he has failed to give the *corpus* of this estate in trust. The nearest he has come to conforming to these two necessary requirements occurs in Item IV. Therein he directs that his single daughters shall be permitted to occupy the house No. 266 South 21st Street (which belonged to this donor's estate) free of rent, and he directed, "my (his) said trustees" to pay all charges in connection therewith, and presumably out of his estate. He then provides that if the daughters do not desire to occupy the house, his trustees may rent or sell the same and the proceeds "shall be held by my said executors & trustees under the remaining trusts hereinafter set forth in this my will." Which of the "remaining trusts" has he referred to? May we say the trusts of his wife's estate? He has created none—for he has failed to give the *corpus* to a trustee.

The next provision—item V—assumes he has given the *corpus* of his wife's estate in trust to the trustees of his will, but we have looked through the entire will, and in vain, as no such gift is made.

This item is as follows: "Subject to the foregoing provisions, I direct my said Executors and Trustees and their successors in the Trust as to the clear net income arising from my wife's estate not derived from the Trusts created by Annie Bradford, to observe and adhere to the following directions: Monthly, to divide and pay over the clear net income derived from my wife's estate in precise conformity to the plan of distribution as to income from my own estate, as hereinbefore stated."

These clauses contain no gift in trust of the *corpus* of the appointed estate. The utmost that can be said for the title of the *corpus* is that it vested in fee under the will of the donor and at least he has given contingent legal life estates to the four children. But spendthrift provisions may not be annexed to legal life estates (see Ehrisman *v.* Sener, 162 Pa. 577), and the children desire these interests released and are competent so to do.

The attempted appointment of this estate is bad for a further reason. The will and codicil contains two powers—that in the will is very limited, and under it Dr. Hays could merely distribute his wife's estate among the children in such shares and upon such trusts as he by will should do; on the other hand, while the power in the codicil was limited, it was only conferred in the event that Mrs. Hays survived the doctor, and this did not happen.

It is as follows: "In the event of my surviving my husband, I, Minis Hays, & in that event only, I give, devise & bequeath all the rest, residue & remainder of my estate, both real & personal to the Executors & Trustees nominated in his will to be held & distributed both as to income & principal, on the same terms & under the same provisions as he has directed in his last will & testament for his own individual estate & I direct that my estate be held with his as a single trust estate."

It is impossible to read Dr. Hays's attempted appointment of this estate, with its many void provisions, without coming to the conclusion that he has tried to deal with her estate as his own, and that he could only do in the event Mrs. Hays survived him. He has actually so far regarded the appointed estate as his own as to neglect to give it in trust or to name trustees.

The conclusion is inevitable that he intended to exercise the power in the codicil, and this he had no right to do. It follows, then, that he had no intention of exercising the very limited power in the will; therefore, his exercise of the limited power is bad, and, hence, this estate vested in the four children under the alternative provision in the will of Mrs. Hays.

Summing up, I submit that (1) if the will of Dr. Hays creates a trust of the estate of Mrs. Hays, then the execution of the power is bad in attempting to create a spendthrift trust, as was implicity ruled in Wickersham v. Savage; (2) the court will not be astute to infer a trust, as was refused in Pepper's Appeal; (3) it was Dr. Hays's intent to exercise the unlimited power in the codicil, and this he could not do; (4) the exercise of the limited power in the will is only good to the extent of the contingent life estates, and these the parties renounce.

All of the four contingent remaindermen, in a class which is closed, and all being *sui juris*, have united in a request for the termination of the trust. I have reached the conclusion that this request should be granted, and, hence, I would sustain exceptions 4, 5, 6 and 7, amend the adjudication accordingly, and award the entire fund of principal and income in equal parts to the four children of the testatrix.