## Lewis' Estate

174

Before Van Dusen, P. J., Sinkler, Klein, Bolger, Ladner, and Hunter, JJ.

176

*Walter B. Gibbons, John Russell, Jr., C. E. Morgan, John R. K. Scott, William T. Connor,* and *Hardie Scott,* for exceptants.

*Boyd Lee Spahr,* contra.

HUNTER, J., December 12, 1943.—

*Exceptions of Francis H. Lewis estate*

The first set of exceptions are those filed on behalf of The Pennsylvania Company, executor and trustee under the will of Francis H. Lewis, deceased (one of the testator's children), and D. Cardinal Dougherty, remainderman under said will. These exceptions raise the single question and charge error on the part of the learned auditing judge in failing to rule that the remainders created by the will of Charles S. Lewis violated the rule against perpetuities and that one third of the trust estate thereby became vested in Francis H. Lewis (now also deceased) under the intestate laws.

We are unanimous in our opinion that the learned auditing judge has correctly disposed of this question and his clear and satisfactory discussion of the reason for his decision leaves nothing to be added. These exceptions are therefore dismissed.

### Exceptions of Newton children

Charles S. Lewis by the fifth item of his will conferred upon each of his children a special power "by last will to direct a distribution among its descendants in trust or absolutely, equally or unequally, amongst all or to the exclusion of one or more".

Mary E. L. Newton by her will appointed a life estate to her husband, Richard Heber Newton. She died December 9, 1913. He survived her one year and died December 19, 1914. The husband was a stranger to the power, and the appointment to him of a life estate was void.

She directed, after the death of her husband and until the death of her last surviving child, that income be distributed to her children and their descendants living at each quarterly or other convenient period of distribution.

She conferred upon her husband power by his last will to modify the foregoing trusts for her children in such way and manner that the shares of those who are less advantageously situated may be equalized with the shares of those who are from other sources otherwise provided for.

She gave to her trustees power to pay sums out of principal, should the income of a child be inadequate for its proper maintenance and support, to acquire a permanent home, or if an emergency should arise such as illness.

The children of testatrix to whom the above benefits were appointed were proper objects of the power.

She conferred upon her last surviving child, should all die without descendants, a power to appoint to charity. This was a violation of the power which was restricted to descendants.

She included among her appointees unborn descendants of her children, and in this respect also exceeded the power, which was confined to descendants living at the termination of the Lewis trust: Horwitz v. Norris, 49 Pa. 213; Wickersham v. Savage, 58 Pa. 365; Pepper's Appeal, 120 Pa. 235; Fotterall's Estate, 2 Dist. R. 146. No child of Mrs. Newton has had or now has issue, the youngest child being now 67 years of age.

The auditing judge sustained the life estates of the children as an authorized appointment under the power, and expressed no opinion as to the disposition of the principal at the death of the last surviving child.

Elizabeth N. Bosworth, one of the Newton children, died February 18, 1943, without issue. The auditing judge awarded her share of income by right of survivorship to the three remaining children.

Ordinarily, where life estates are separable and valid, questions as to the validity of remainders will not be determined until the death of the life tenants. However, because of the contentions of exceptants we will assume that the appointment in remainder is void, and that principal is vested in the Newton children under the provisions of their grandfather's will made in default of appointment, and reserve the question whether the trust appointed for their lives is separable and is to be sustained as an active trust.

The Newton children contend:

(a) The exercise of the power of appointment by exceptants' mother, Mary E. L. Newton, was totally void and did not divest the exceptants of the absolute estates given to them under the testator's will.

(b) If the learned auditing judge was correct in holding that Mary E. L. Newton appointed valid life

estates to these exceptants, nevertheless, she having made no valid disposition of principal under her power, the exceptants have life estates with vested remainders, and these estates merge into absolute ownership. quired to appoint absolute estates, legal or equitable. appointment. All of her children were born in the lifetime of their grandfather, and the trust set up by her will terminates upon the death of her last surviving child. She having selected lives in being, all limitations made by her would be sustained under Warren's Estate, 320 Pa. 112.

In our opinion Mrs. Newton had full authority under the will of her father to appoint life estates to her children and to protect them by a trust. She was not required to appoint absolute estates, legal or equitable. In the words of the power she was authorized "to direct a distribution amongst its [the child's] descendants in trust or absolutely, equally or unequally, amongst all or to the exclusion of one or more".

The donee of a special power has implied authority to appoint life estates: McClellan's Estate, 221 Pa. 261; an exception to this rule being where there is but one member in the permitted class, in which case there can be but one distribution: Pepper's Appeal, supra; Johnson's Estate, 276 Pa. 291.

An appointment "in trust" was expressly authorized by the power, and an attack cannot be made upon the exercise of the power for that reason alone: Hays' Estate, 288 Pa. 348; Penrose's Estate, 317 Pa. 444. We believe that the appointment, insofar as it was for the benefit of the children, who were the objects of the power, was fully authorized.

Forrest's Estate, 8 D. & C. 461, cited by exceptants, is to be distinguished. There an appointment upon spendthrift trust was struck down because there was no authority to appoint in trust. Here, as in Hays' Estate and Penrose's Estate, supra, there is an express authority to appoint "in trust".

Nor was the power limited to the duration of the trust under the Lewis will, because the power was conferred using the words of the Lewis will, "anything hereinbefore or hereafter contained to the contrary notwithstanding". The power to appoint principal "in trust" negatives any idea of an immediate distribution, and supports the appointment of continuing life estates in trust for the benefit of the objects of the power.

The important question is whether the valid parts of the appointment are possible of separation from those which transgress the power and are void.

Where a power is exercised in violation of the rule against perpetuities, an active trust created to pay income for life will not be defeated because of the failure or invalidity of the gift over of the corpus of the estate: Ewalt v. Davenhill et al., 257 Pa. 385; McCreary's Trust Estate, 328 Pa. 513.

The same rule applies in the case of a special power where part of the appointment is good and part bad.

In Hays' Estate, 288 Pa. 348, supra, testatrix gave her estate to her husband, for life, and upon his death directed that the estate be "distributed" among her children and issue, living at the death of her husband, "in such shares and upon such trusts as my said husband may by his last will and testament direct", with a gift in default of appointment to the children and issue. The husband exercised the power by appointing the estate upon spendthrift trust to pay the income to the children and issue for their respective lives, with cross-remainders of life estates among them should any child or grandchild die childless, and with further limitations which were in excess of the power. Testatrix left four children in whom corpus vested subject to such of the provisions regarding income as were found to be valid. Mr. Justice Simpson said (p. 353):

"Appellant's final contention, citing Johnston's Est., 185 Pa. 179, and kindred cases, is that the donee's

paramount purpose was the illegal one regarding the principal of the estate, and, the distribution of the income being inseparably connected therewith, the whole plan must be declared invalid. Here, however, there is no connection whatever between the distribution of the income and that of the principal, except, as must always be the case, that the latter is postponed until the trust as to the former is ended. It is clear, however, that the provision as to distribution of the income can readily stand alone, undisturbed and unaffected by the striking down of the invalid provision as to the principal; hence it must be sustained: Lawrence's Est., 136 Pa. 354; Whitman's Est., 248 Pa. 285; Jones's Trust Est., 284 Pa. 90; Ledwith v. Hurst, 284 Pa. 94. The suggestion that the spendthrift trust should be declared invalid, because, notwithstanding it, creditors could sell the distributees' estate in remainder, has no weight. If they did the spendthrift trust provision would continue to insure to the children the income during their lives, and this is exactly the purpose for which such a trust is created."

The rule in favor of separating and sustaining the effective part of an appointment under a special power is also supported in Carter's Estate, 254 Pa. 565, McClellan's Estate, supra, A. L. I. Restatement of Property 1995, §362, and 49 C. J. 1300, §135.

We are fortified in our conclusion as to the effect of the primary life estate which testatrix appointed in excess of the power to her husband by what is said in Farwell on Powers (p. 354):

"An appointment by will of a particular estate to a stranger, with remainder to an object, is a good appointment in remainder; but the particular estate fails, and the subject of the power, during its continuance, goes to the persons entitled in default of appointment."

As we read the provisions of the will of Mrs. Newton we are convinced her dominant intent was to protect

the children by a trust for their lives, and importantly to provide for payments of principal in the discretion of the trustees to the children for their maintenance and support, to purchase a home, and in case of emergency, such as illness. If this discretion is exercised in full then the estate will have been wholly paid to proper objects. We believe that all other provisions of the appointment are subsidiary to these purposes for the benefit of the children, and that the good and bad parts of the appointment are quite distinct and can readily be separated.

A trust with discretionary powers in the trustee as to payments of principal for support and maintenance is an active trust and may not be terminated by agreement of the parties: Henderson's Estate, 258 Pa. 510; Falconer's Estate, 303 Pa. 492.

There can be no objection to the authority delegated to the trustees to make discretionary payments of principal. Such authority is frequently found in trust instruments and is justified by the power given Mrs. Newton to appoint "in trust". The donee of the special power may delegate to another a further power of appointment, subject to the restrictions of the original power: McClellan's Estate, supra; Lewis' Estate, 269 Pa. 379.

In reply to the other contentions made at the argument, it should be stated that the invalidity of the limitations of the Newton will as to her individual estate under the laws of New York, the place of her domicile, is without effect upon her appointment of the Lewis estate. The latter is a Pennsylvania estate, and its disposition is governed by Pennsylvania laws: Bingham's Appeal, 64 Pa. 345; Aubert's Appeal, 109 Pa. 447. See also opinion filed by this court in Barton's Estate, 49 D. & C. 273.

It should be stated also that Mrs. Newton's will, in which she gave the residue of her estate, "including

any and all property over which I have any control or power of appointment", is an execution of the Lewis power without express mention of it. Blanket appointments are valid, and include both general and special powers: A. L. I. Restatement of Property 1906, §341.

We wish to commend counsel for their research and oral and written arguments in a complicated case. The court has been greatly aided in arriving at its decision.

All exceptions are dismissed and the adjudication is confirmed absolutely.

LADNER, J., dissenting.—I concur with the majority in their disposition of the exceptions filed on behalf of The Pennsylvania Company for Insurances on Lives & Granting Annuities, executor and trustee under the will of Francis H. Lewis, deceased (one of testator's children), and on behalf of Dennis Cardinal Dougherty, remainderman under the said Francis H. Lewis will.

I dissent, however, from the disposition made by the majority of this court of the exceptions filed on behalf of the Newton children for the reasons that follow.

One of decedent's children—a daughter, Mary E. L. Newton—died in 1913, leaving four children, all of whom were born in her father's lifetime. She died a resident of Greene County, New York, leaving a will by which she devised her residuary estate, including any property over which she had the power of appointment, in trust to pay the income to her husband for life, with subsequent contingent life estates to her children and the survivor of them and upon the death of the survivor of her children to her descendants then living, per stirpes and in fee, with provision that if there should be no such descendants her last surviving child could appoint the principal of her estate to charitable institutions in the City of Philadelphia. No child of the said Mary E. L. Newton has had or now has issue, the youngest child being now 67 years of age.

The learned auditing judge was asked at the audit to award one half of the principal to Mary Newton's three children and the estate of one of them now deceased, absolutely, on the ground that their mother's exercise of the power of appointment was defective and invalid. The learned auditing judge declined so to do. While expressing no views on the validity of the remainder interests appointed by Mrs. Newton, he held that the appointment of the life estates to her children was valid, since all of them were lives in being at the time of decedent's death. Exceptions were filed by the respective counsel to this ruling, which exceptions all raise a single question, viz, whether the power of appointment given Mary Newton by decedent's will was validly exercised. This question requires an examination of the nature and extent of the right to appoint given by decedent, Charles S. Lewis, to his children by his will.

Decedent by item fifth of his will gives his residuary estate to named trustees and their successors "in trust until the decease of the last survivor of my children and the expiration of 21 years thereafter unless all my descendants shall be dead prior thereto and to hold the same thus". The duration of the trust, it will be observed, is clearly limited to the three selected lives (decedent's children) and 21 years thereafter. Decedent next, by subdivision 6 of item fifth of his will, just as clearly directs distribution at that time to his then living descendants.

After directing such distribution as aforesaid, in the same paragraph the decedent continues:

"Provided however it shall be competent for any child of mine by last will to direct a distribution among its descendants in trust or absolutely equally or unequally amongst all or to the exclusion of one or more in which case the payment shall be made to her or her descendants in the way and manner directed in said

will anything hereinbefore or hereafter contained to the contrary notwithstanding.

"In trust to pay over to every descendant before and after my decease who shall then be found entitled, his or her share in fee."

This proviso obviously relates to principal.

In the unnumbered paragraph, the fourth in order of item fifth, which provides for the payment of the income during the duration of the trust to his children and descendants of deceased children, there is this proviso:

"Provided further that it shall be competent for any child of mine, by last will, *notwithstanding anything herein contained*, to direct that the share of the income which would otherwise pass to his or her descendants per stirpes, shall be divisible among his or her descendants unequally or amongst one or more to the exclusion of the others in which case such descendants shall take the share of income my child (their ancestor) would have taken if living, in the way and manner thus directed." (Italics supplied.)

It will be seen that these powers of appointment both as to principal and income given to the children by decedent are in no sense general. They are limited and special and when analyzed it will be seen that the last-quoted power enabled each child of testator by will to direct unequal distribution of its share of the income among its own descendants in lieu of the rigid per stirpes distribution of income directed by testator if the power should not be exercised. But it should be observed that the plain import is not to overcome the positive direction of decedent that the trust should terminate after 21 years from the date of the death of his last surviving child, but rather to be construed as a right given to his children to reapportion the income to their descendants, *within the period only of the trust duration as fixed by decedent.*

The proviso first quoted relating to principal, analyzed, shows that it gives each child, by will, power to direct distribution and payment of the trust principal again unequally, instead of the rigid per stirpes distribution fixed by decedent to his descendants living at the time of the termination of the trust, and to direct further that such distribution be made in trust or absolutely. The power at best is limited to a selection from a particular class. This much the learned auditing judge concedes in his adjudication.

I think that the phrase used in both provisos, i. e., "anything hereinbefore or hereinafter contained to the contrary notwithstanding" was intended to apply only to the strict per stirpes distribution which would be required if the power should not be exercised. This seems clear from the position of the provisos and the subject matter of the particular paragraphs in which they appear. It surely was not intended to give authority to decedent's children to extend the duration of the trust beyond the time which decedent in the very first and controlling paragraph so definitely fixed in order to avoid all possibility of violating the rule against remoteness. The will bears all the earmarks of the work of a skilled draftsman who would have inserted these qualifying phrases in that first paragraph if decedent intended to authorize the donees to extend the duration of the trust.

Now, what did Mary E. L. Newton attempt to do by her last will and testament? Item fourth of her will, so far as pertinent, reads:

"All the rest, residue and remainder of my estate . . . including any and all property over which I have any control or power of appointment, I give, devise and bequeath unto my executors and trustees hereinafter named and their successors in trust . . . to pay over the net income thereof in quarterly or other convenient payments unto my said husband for . . . his

natural life, in trust, from and after the decease of my said husband to divide the net income until the decease of the last surviving child of mine, at quarterly or other convenient periods into as many parts or shares as at each time of distribution of income, there shall be children of mine then alive, and children of mine then dead, represented by descendants then alive, and to subdivide the share of income falling to each set of descendants of a child of mine dead, among them per stirpes upon the principle of representation and to pay over, at each time of distribution of income, to each child and descendant of mine who shall then be found entitled, its share of said income.

"In trust after the decease of the last surviving child of mine, to divide the principal of the estate into as many parts or shares as at that time there shall be children of mine then dead, represented by descendants then alive and to sub-divide the share of principal falling to each set of descendants of child of mine then dead, among them per stirpes, upon the principle of representation, and to pay over, assign and convey to each descendant of mine who shall then be found entitled, its share of said principal in fee.

"If at the time of the decease of such last surviving child of mine there shall be no descendants of mine surviving to take the principal of the trust, then . . . such last surviving child . . . may appoint the principal of the trust to and amongst such charitable and philanthropic institutions of the City of Philadelphia as such child may by last will and testament limit and appoint."

She then further conferred upon her husband the power by his last will and testament to modify the foregoing trusts of her children in such way and manner that the shares of those who are less advantageously situated than others might be equalized with the shares of those who are from other sources otherwise provided for, etc. Then follows authority to her trustees, under

certain circumstances not here necessary to recite, to distribute the principal to her children if necessary.

The learned counsel for the Newton children in his brief accurately summarizes the extent of the attempted exercise in the following language:

"She [Mary Newton] directed the net income was to be paid to her husband for life, a person not authorized to receive it under the language creating the power. It is true that the husband died shortly afterwards, but all further estates in income were contingent upon the recipients surviving Mr. Newton, and further contingent upon survivorship as between them and upon the existence or nonexistence of each child's descendants. She empowered her husband, without any authority in the Lewis will, to modify by his will the trusts created by Mrs. Newton as between her children, and a further right was conferred upon her executors and trustees to make payments out of principal for the maintenance and support of her children; to provide permanent homes for them; and to deal with such emergencies as illness. The rights of the children in income and also in principal were therefore contingent and subject to determination by their father, or by Mrs. Newton's trustees.

"She brought in as income beneficiaries issue who might be born to her own children after the termination of the trust set up by Mr. Lewis—parties clearly not entitled to participate.

"*No vested estate* in the principal is created. Principal is not distributable under Mrs. Newton's will until the decease of Mrs. Newton's last surviving child, at which time division of principal among the descendants of her children is contemplated, such descendants being nonexistent at the time of her death, and on April 10, 1942 (the date fixed by her father, the testator, for ascertaining descendants entitled to share in his estate), and are still nonexistent and unascertainable.

"Finally, if at the decease of Mrs. Newton's last surviving child there shall be no descendants of her then surviving, she attempts to provide for distribution of the entire principal in accordance with an appointment if made by the last surviving child, which is limited to 'charitable and philanthropic institutions of the City of Philadelphia'—a power and a beneficiary wholly foreign to any provision of Mr. Lewis' will."

The learned auditing judge, though conceding the power granted to Mary by her father's will was limited and special, nevertheless felt that the life estates to Mary's children were to be regarded as a valid exercise of the power because they were all lives in being at the time of decedent's death. Under well-settled principles he refrained from passing on the attempted distribution of the principal at their deaths. After careful consideration I have come to the conclusion that his ruling upholding the life estates to Mary Newton's children was error because the donees had no authority to extend the duration of the trust, the time of the termination of which was definitely fixed by her father. That period having now expired, her attempt further to postpone the vesting of the principal was wholly ineffective. It is a matter of comment that her sister, Mrs. Stovell, apparently so understood the limitation of the power conferred by their father, for she made no attempt in her will to extend the trusts she created beyond the time limit fixed by her father's will.

In Forrest's Estate, 8 D. & C. 461, this court, in an opinion by the learned Judge Gest, struck down in its entirety the exercise of a limited power because without authority the donee attempted to attach spendthrift trust provisions to a life estate and also because the remainders were void in that they were granted to parties not entitled to receive the same. Said Judge Gest (p. 461):

"The donee of a general power of testamentary appointment possesses, under the law of this State, a

power almost equivalent to absolute ownership, but the present is the case of a special power, which must be carefully distinguished, for the donee of such a power cannot do more than is permitted by the will of the donor: Wickersham v. Savage, 58 Pa. 365, where the court said that a special power is to be strictly executed, otherwise its execution amounts to nothing."

In his opinion Judge Gest cites as further authority Pepper's Appeal, 120 Pa. 235, Johnson's Estate, 276 Pa. 291, and Rafferty's Estate, 281 Pa. 325. These may be added: Horwitz v. Norris, 49 Pa. 213, at p. 221, and Fotterall's Estate, 2 Dist. R. 146.

While Warren's Estate, 320 Pa. 112, loosely examined, might seem to support the ruling of the auditing judge, it must be distinguished on the ground that there the donor created a general power of appointment. I have not omitted to consider the phrase "in trust" in the proviso as to distribution of the principal, which paragraph, it will be recalled, reads:

"Provided, however, that it shall be competent for any child of mine by last will to direct a distribution among its descendants *in trust* or absolutely, equally or unequally amongst all or to the exclusion of one or more, in which case, the payment shall be made to his or her descendants in the way and manner directed in said will, anything hereinbefore or hereinafter contained to the contrary notwithstanding". (Italics supplied.)

What this testator meant by the words "in trust" is not clear. Certainly the power to distribute the principal is no authority to Mary Newton to create trusts of income either during the period of the Lewis trust or thereafter. We might speculate, of course, that this may have been for the purpose of setting up a trust for maintenance of minor descendants during their minority, but within the duration of the decedent's trust; or perhaps an equitable estate as differentiated from a

legal estate. Whatever the meaning, we are clear that it was not intended as any authority to postpone distribution so specifically directed by her father to be made after 21 years from the time of his last surviving child's death. As we view it, under decedent's will the distribution was to be made then, and could not be extended by withholding the vesting of the interests beyond that time.

For these reasons I would sustain exceptions of the Newton children.