## Hopkins Estate

*W. Leroy McKinley* and *Ralph Evert,* for accountant.

*Edward R. Carpenter* and *Norman E. Donoghue, 2d,* for administrator of estate of Lydia L. Eyre.

*William Carson Bodine,* and *D. H. Huggler,* for executor of Helen Eyre.

SHOYER, J., March 16, 1972.—Edward M. Hopkins died December 12, 1890, leaving a will dated December 4, 1882, and a codicil thereto dated January 17, 1884, whereby in paragraph Fifth of his will he gave his residuary estate to his trustee, to pay the income to his wife and six children, equally, during their respective lives (including this portion for the benefit of his daughter, Lydia L. Eyre) and upon their respective deaths, he provided: "I give and devise her share of the residuary estate to such of her children or the issue of a deceased child and in such shares as she my said daughter may be her last will direct, limit and appoint and in default of such a will, I give the said share in equal shares to her said children and the issue of any deceased child, such issue to take only the parent's share."

Lydia L. Eyre died November 21, 1924, leaving a

will in clause Fourth of which, specifically referring to the power of appointment given her by her father's will, provided that the portion of his estate, so held in trust for her during her life, be divided into equal shares, one share for each of her three children, namely, Lydia Lewis Eyre, Anna M. Eyre and Helen Eyre, said shares to be held in trust for her said daughters, upon the same uses and trusts as provided by her will concerning her own residuary estate. And, in item Third of her will, she provided as to her own residuary estate, that the same should be divided into three parts, one of said parts to be held in trust by the Fidelity Insurance Trust and Safe Deposit Company (now The Fidelity Bank), for her daughter Helen Eyre for life, for her sole and separate use, without power of anticipation or alienation and not subject to the debts or control of her husband "and from and immediately after the death of my daughter . . . in case my said daughter, *Helen Eyre* shall die without leaving any child, children or the lineal descendants of any deceased child or children surviving her, then In Trust to hold the said third part of my said residuary Estate to and for the use of such of my other children as may survive my said daughter, *Helen Eyre,* and the lineal descendants of such of my other children as may then be dead . . ."

The fund being here accounted for was awarded under the adjudication of Lamorelle, P. J., dated January 9, 1926, in trust for Helen Eyre, as the share which had been validly appointed by the will of Lydia L. Eyre (Sr.).

This account was filed because Helen L. Eyre died on September 13, 1969, unmarried and without issue, leaving a will upon which letters testamentary were granted in the State of Colorado to First National Bank of Colorado Springs, Executor.

The only child of the said Lydia L. Eyre (Sr.) who survived Helen Eyre was Helen's sister, Anna M. Eyre. There were no issue of any deceased children of the said Lydia L. Eyre (Jr.).

Anna M. Eyre died December 15, 1969, domiciled in Colorado, leaving a will upon which letters of administration c.t.a. were granted to First National Bank of Colorado Springs. An adjudication of Anna's share is being filed contemporaneously with this adjudication.

The accountant has taken the position that upon Helen's death, her share of principal became distributable to her sister, Anna, and Anna, having since died, the share is distributable to the personal representative of Anna's estate.

The First National Bank of Colorado Springs (it is also executor u/w of Helen and administrator c.t.a.d.b.n. of the estate of Lydia L. Eyre (Jr.)) as administrator c.t.a. of Anna's estate, claims the remainder of the corpus of the fund distributable.

Counsel for the executor under the will of Helen contends that Lydia L. Eyre exceeded her power of appointment by appointing in further trust for the benefit of her children for their respective lives and upon their deaths to their respective children, and that, since the exercise of the power was invalid, Lydia's share of her father's estate should, on Lydia's death, have been distributed outright to her three daughters; and the share which continues in trust for Helen's life should now be paid to the personal representative of Helen's estate.

In support of an award to Helen's estate, counsel points out that following the death of Lydia L. Eyre (Sr.), at the audit of the trustee's account in 1926, counsel for the accountant suggested that Mrs. Eyre's share be awarded outright to her three daughters

because her appointment was ineffective. However, Judge Lamorelle's adjudication dated January 9, 1926, states:

"The Auditing Judge is asked to say whether there is a valid exercise of the right of appointment. He is of the opinion that there is. No argument was made or suggested as to why it is invalid and if the three children, who are affected by the ruling think otherwise, the right of exceptions is theirs."

No exceptions were filed to Judge Lamorelle's adjudication.

When Lydia (Jr.) (daughter of Lydia, Sr.) died on February 21, 1934, unmarried and without issue, the court, at the audit of the trustee's account, was asked to decide whether, under the language of paragraph Third of Mrs. Eyre's will, Lydia (Jr.'s) share should continue in trust for her surviving sisters or whether it was distributable to them outright. This court, in an opinion by this court en banc by Judge Lamorelle dated May 8, 1935, sustained exceptions to the adjudication and held that Lydia's share was distributable outright to her two surviving sisters, Anna and Helen: Hopkins' Estate, 23 D. & C. 444 (1935).

In Springman Estate, 422 Pa. 258 (1966), the court restated the fundamental rule basic in the interpretation of wills, at pages 263-64:

"It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or con-

flicting, or the testator's intent is for any reason uncertain: Dinkey Estate, 403 Pa. 179, 168 A. 2d 337; Pruner Estate, 400 Pa. 269, 162 A. 2d 626; Wanamaker Estate, 399 Pa. 274, 159 A. 2d 201; Hope Estate, 398 Pa. 470, 159 A. 2d 197.

"It is not what the Court thinks he might or would or should have said in the existing circumstances, or even what the Court thinks he meant to say but what is the meaning of his words." [Citations]

Hunter, Vol. 5, 89, states the rule to be that "special powers can only be exercised in favor of the specified class; an appointment to others is void: Salter v. Howell, 15 S. & R. 188; Lewis Estate, 349 Pa. 571."

The power to appoint to "children and issue" means children and the issue of deceased children; an appointment to a living child, for life, with remainder to his issue is void as to the issue: Horwitz v. Norris, 49 Pa. 213 (1865); Wickersham v. Savage, 58 Pa. 365 (1868); Pepper's Appeal, 120 Pa. 235 (1888); Fotterall's Estate, 12 C.C.R.548 (1892).

In Horwitz v. Norris, supra, the testator died in 1841, and by his will gave a one-sixth share of his estate to his trustees, to pay the income to his son, for life, and after his death "to the use and behoof of the child and children of his said son, born and to be born, that should be living at his death, and the lawful issue of such as might then be dead, and in such parts, shares, and proportions, and for such estate and estates, use and uses as his son by his last will and testament should direct, limit, or appoint."

The son's will, after referring to the power of appointment under his father's will, gave the share to his trustees and to pay one-third of the income to his wife, and of the balance of the share one-fifth of the share to his son, in fee and the remaining four-fifths

for the use of his four daughters and their husbands, during their lives and after their deaths for their respective issue and children as they shall appoint by their will. The four daughters challenged the validity of the appointment by their father's will.

The court held the appointment in trust to be invalid and said, page 217:

"It is apparent at first sight that the power thus conferred upon Joseph P. Norris, second, was not a general power of appointment. He was not enabled to select the object of the original testator's bounty, nor even the class out of which those objects could be selected. The devisees were designated by the donor of the power. They were the children of Joseph P. Norris, second, who might be living at his death, and the issue of any child or children then deceased. There having been no such issue, they were the children exclusively. The donee of the power had therefore but a very limited authority . . . The general rule is well settled that a power to appoint among children does not authorize either a general or partial appointment to grandchildren . . ."

And, at page 220:

"So the appointment to the respective issue and children of the complainants, the daughters of the donee of the power, was without authority and void. We have seen they were not of the class among which Joseph P. Norris, second, was empowered to apportion."

See also Forrest's Estate, 8 D. & C. 461 (1926), adjudication by Judge Gest. Our Supreme Court in Schede Estate, 426 Pa. 93, 96 (1967), reiterated the rule in Pennsylvania that strict and literal compliance with the terms of a special power of appointment is absolutely necessary for its valid and effective exercise.

We are not now called upon to pass upon the ques-

tion whether the adjudication by Judge Lamorelle was correct in upholding the appointment of the share in trust for the *life* of the donor's granddaughter. As to the appointment of the remainder, this court is convinced that the donee exceeded her power. The share held passed to the donor's granddaughter Helen under the substitutionary clause of his will and it is now distributable to granddaughter Helen's estate. An award will be made accordingly.

And now, March 16, 1972, the account is confirmed nisi.